Case 5:25-cv-00307   Document 17   Filed 02/02/26 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
February 02, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| JAISEL ALEXIS BELLIDO-CRUZ | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:25-cv-307 |
| | § | |
| PAM BONDI *et al.* | § | |

# ORDER

Before the Court is Petitioner Jaisel Alexis Bellido-Cruz's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Dkt. No. 1).[1] For the reasons below, Petitioner's Writ of Habeas Corpus is **GRANTED IN PART** and **DENIED IN PART** (Dkt. No. 1).

## I. BACKGROUND

This case is among a rapidly increasing number before the Court challenging the federal government's new policy of mandatorily detaining all noncitizens charged with entering the United States without inspection.[2] Petitioner, a Cuban citizen, entered the United States on November 21, 2023 (Dkt. No. 1 at 10, ¶ 13). Upon entry, he was granted humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) (Dkt. No. 1 at 10, ¶ 13). After his

---

[1] The Petition names Pam Bondi, Kristi Noem, Todd Lyons, Miguel Vergara, and Warden, Rio Grande Processing Center, as respondents in this action. But the Warden, "the person who has custody over [Petitioner]" is generally the only properly named respondent. 28 U.S.C. §§ 2242, 2243; *see also Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." (citations omitted)).

However, Federal Respondents' position is that they have detention authority over aliens detained under Title 8 of the United States Code (*see* Dkt. No. 11 at 1 n.1). Accordingly, the Court will not dismiss Federal Respondents at this time.

[2] The Undersigned has already granted Petitioner's relief on the merits in a *myriad* of cases. "[Y]et Respondents insist upon denying the relief that the Court has found is required." *J.B.H.P. v. Warden, Stewart Det. Ctr.*, No. 4:25-CV-494-CDL-AGH, 2025 WL 3762821, at *1 (M.D. Ga. Dec. 30, 2025); *see also Lahera Lopez v. Noem*, No. 5:26-CV-0099-JKP, 2026 WL 198237, at *1 (W.D. Tex. Jan. 22, 2026) (Pulliam, J.) ("A path paved from an overwhelming majority of cases addressing the issues, . . . has unanimously rejected Respondents' position when faced with typical facts, such as those present here.").

release, Petitioner timely applied for Legal Residency pursuant to the Cuban Adjustment Act of 1966[3] (Dkt. No. 1 at 6). Petitioner's residency application has been pending for over a year (Dkt. Nos. 1 at 6; 12, ¶ 27).

On October 13, 2025, ICE agents advanced toward Petitioner's work truck while he was driving to a work site in Abilene, Texas (Dkt. No. 1 at 6; 8, ¶ 2). They arrested him and transferred him to the Rio Grande Processing Center (Dkt. No. 1 at 6; 8, ¶ 2). There, ICE held him without bond, despite 8 U.S.C. § 1226(a) providing for one (Dkt. No. 1 at 8, ¶ 4; 11, ¶ 22). He remains in ICE's custody at the Rio Grande Processing Center.[4]

On December 31, 2025, Petitioner filed this petition for a writ of habeas corpus, alleging he is entitled to a bond hearing, and challenging the administration's interpretation of 8 U.S.C. §§ 1225(b)(2), 1226(a)[5] (*see* Dkt. No. 1). On January 12, 2026, Respondents moved for summary judgment on Petitioner's claims (*see* Dkt. No. 11). Given the time-sensitive nature of Petitioner's claims, the Court resolves the issues without a

---

[3] Petitioner incorrectly labeled the Act as brought in 1967. Under the Act, Cuban nationals who meet eligibility requirements may apply to become lawful permanent residents. To qualify, applicants must be a native or citizen of Cuba, admitted or paroled after January 1, 1959, and physically present in the United for at least one year upon their application date. Cuban Adjustment Act of 1966, Pub. L. 89-732, 80 Stat. 1161 (codified as amended at 8 U.S.C. § 1255 note); *see also Coal. for Humane Immigrant Rts. v. Noem*, No. 25-CV-872 (JMC), 2025 WL 2192986, at *1 (D.D.C. Aug. 1, 2025) ("[T]he Cuban Adjustment Act (CAA), . . . has long permitted Cuban nationals who were admitted or paroled into the United States to become lawful permanent residents after being here for more than a year.").

[4] *See* Online Detainee Locator System, U.S. Immigration and Customs Enforcement, available at https://locator.ice.gov/odls/#/search (last visited Jan. 30, 2026).

[5] In *Maldonado Bautista*, United States District Judge Sunshine Sykes certified a nationwide class under Federal Rule of Civil Procedure 23(b)(2) for aliens "who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987, at *2 (C.D. Cal. Dec. 18, 2025) (defining class); *id.* at *29 (granting class certification). The court also granted the named petitioners' motion for partial summary judgment and found that class members are detained under § 1226 rather than § 1225. *See id.* at *12. The Court grants relief on the Petition alone. *See Guzman v. Bondi*, No. 1:25-CV-2055-RP, 2025 WL 3724465, at *6 (W.D. Tex. Dec. 23, 2025) (declining to consider the effect of *Maldonado Bautista* and deciding solely on statutory grounds).

2

hearing. *See Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (a court need not hold a hearing if the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts").

## II.  LEGAL STANDARD

Pursuant to 28 U.S.C. § 2241, a district court may grant a writ of habeas corpus to a petitioner in federal custody in violation of the Constitution or federal law. Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001) (citations omitted), *superseded by statute on other grounds*, Real ID Act of 2005, H.R. 418, *as recognized in Nasrallah v. Barr*, 590 U.S. 573 (2020). Accordingly, challenges to immigration-related detention are within a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III.  DISCUSSION

### A.  Exhaustion of Administrative Remedies

As a threshold matter, the exhaustion doctrine does not bar judicial review of this Petition. *See Montano v. Texas*, 867 F.3d 540, 542 (5th Cir. 2017) ("Unlike 28 U.S.C. § 2254, Section 2241's text does not require exhaustion."); *Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012) (exhaustion is not required where a petitioner raises a claim that agency would clearly reject); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 496 (S.D.N.Y. 2025) (exhaustion is not statutorily required and was excused given that available remedies provided no genuine opportunity for adequate relief and the petitioner raised a substantial constitutional question); *Buenrostro-Mendez v. Bondi*, No. CV H-25-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025) (exhaustion was not

3

statutorily required under the circumstances and the issue of statutory interpretation belongs in the province of the courts).

### B. Sections 1225(b)(2) and 1226(a)

Section 1225(b)(2)(A) mandates detention of undocumented aliens when the "examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted" into the country. In contrast, section 1226(a) offers discretionary detention for undocumented aliens who are present in the United States and eligible for removal. Under section 1226(a), "[t]he Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting § 1226(a)). "[T]he Attorney General 'may release' an alien detained under § 1226(a) 'on bond or conditional parole.'" *Id.* (citation modified). Importantly, "noncitizens detained under section 1225(b)(2) must remain in custody for the duration of their removal proceedings, while those detained under section 1226(a) are entitled to a bond hearing before an IJ at any time before entry of a final removal order." *See, e.g.*, *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1306 (W.D. Wash. 2025). The Department of Homeland Security's "longstanding interpretation" is that section 1226 applies to aliens who crossed the border but are not immediately apprehended. *See Savane v. Francis*, 801 F. Supp. 3d 483, 489 (S.D.N.Y. 2025) (citing Tr. of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)).

Moreover, in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Supreme Court described § 1226 as the "default rule" governing "an alien present in the country" pending their removal. 583 U.S. at 288. Indeed, *Jennings* plainly states: "§ 1226 applies to aliens already in the United States," thus undercutting Respondents' characterization of the

4

statutory language at play. *Id.* at 303. The Court would be hard-pressed to classify Petitioner, who has resided in the United States for two years, as an alien seeking admission both at the time he entered and now (Dkt. No. 1 at 10, ¶ 13). If the Court were to adopt Respondents' position, that would effectively render § 1226(a) useless and run afoul of *Jennings*'s reasoning. *Echevarria v. Bondi*, No. CV-25-03252-PHX-DWL (ESW), 2025 WL 2821282, at *7–8 (D. Ariz. Oct. 3, 2025); *Padron Covarrubias v. Vergara*, No. 5:25-CV-112, 2025 WL 2950097, at *3–4 (S.D. Tex. Oct. 8, 2025).

Many courts have grappled with this issue in the preceding months,[6] including the Southern District of Texas. For example, United States District Senior Judge Lee H. Rosenthal recently rendered a decision, succinctly concluding "that § 1226, not § 1225, applies to [petitioner's] detention." *Buenrostro-Mendez*, 2025 WL 2886346, at *3. Of course, this Court is not bound by Judge Rosenthal's decision. *Camreta v. Greene*, 563 U.S. 692, 701 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (citation omitted)). However, the Court nonetheless is persuaded by Judge Rosenthal's reasoning. Judge Rosenthal's opinion indicates a strong consensus amongst the district courts regarding the interpretation of sections 1225 and 1226. *Buenrostro-Mendez*, 2025 WL 2886346, at *3 (collecting cases); *see also Rodriguez*, 2025 WL 2782499, at *3 (noting the widespread agreement by district courts concluding "the government's position belies the statutory text of the INA, canons of

---

[6] In a hearing before United States District Judge John A. Kazen in *Padron Covarrubias v. Vergara*, No. 5:25 CV-112, the Government declined to defend its position on this issue, stating "[g]iven the ruling in [*Buenrostro-Mendez*] your Honor, I am hesitant to argue our position vehemently before this court, and basically would rest on our brief" (Hr'g at 01:40:22–1:40:39). Respondents now advise that *Buenrostro-Mendez* is on appeal; however, they have not articulated any reason for the Court to reevaluate its position.

statutory interpretation, legislative history, and longstanding agency practice"). Additionally, a Seventh Circuit panel recently held, based on a preliminary record, that the detention of non-citizens who are "unlawfully already in the United States" is authorized by 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b). *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060-62 (7th Cir. 2025). Based on the abundance of cases[7] that have already addressed these arguments and the Government's apparent timid approach in the *Padron Covarrubias* matter, the Court declines to restate the in-depth analysis provided by these courts but stands in agreement. *Chogllo Chafla v. Scott*, No. 2:25-CV-00437, 2025 WL 2688541, at *5 (D. Me. Sep. 22, 2025) (describing the abundance of "persuasive" and "well-reasoned" opinions on this issue by district courts across the country).

Accordingly, the Court finds section 1226(a) applies to Petitioner's detention.[8] As

---

[7] The Court is aware of four cases outside this district that went the other way: *Vargas Lopez v. Trump*, 802 F. Supp. 3d 1132 (D. Neb. 2025); *Chavez v. Noem*, 801 F. Supp. 3d 1133 (S.D. Cal. 2025); *Garibay Robledo v. Noem*, 1:25-cv-177-H, slip. op. (N.D. Tex. Oct 24, 2025); and *Barrios Sandoval v. Acuna*, 6:25-cv-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025). Additionally, this Court is aware of at least one district judge in the Southern District of Texas who recently held in Respondents' favor. *Cabanas v. Bondi*, No. 4:25-CV-04830, 2025 WL 3171331, at *8 (S.D. Tex. Nov. 13, 2025) (Eskridge, J.). The Court is not compelled by these cases, and instead, finds that the weight of the authority plainly lies on the other side.

[8] Although Petitioner raises both statutory and constitutional grounds, the Court declines to decide the due process claims as the Court grants relief based on the applicability of section 1226(a) alone. *See Pizarro Reyes v. Raycraft*, No. 25-cv-12546 (RJW), 2025 WL 2609425, at *8 (E.D. Mich. Sep. 9, 2025). Nor will the Court reach Petitioner's Administrative Procedure Act, Stay of Removal, and Suspension Clause claims for the same reason (*see* Dkt. No. 1 at 18–21). *See Mendoza-Menjivar v. Bondi*, No. 1:25-CV-2060-DAE, 2026 WL 89964, at *4 (W.D. Tex. Jan. 12, 2026) (Ezra, J.); *Jacobo v. Ripa*, No. 2:25-CV-1190-KCD-NPM, 2026 WL 145460, at *2 (M.D. Fla. Jan. 20, 2026) (citing *Pizarro Reyes*, 2025 WL 2609425, at *8). If Respondents do not provide Petitioner a bond hearing as ordered, he may renew his claims in a subsequent complaint. *Jacobo*, 2026 WL 145460, at *2.

Moreover, when a filing contains both habeas and non-habeas claims, the proper course is to bifurcate the matters and decide them separately. *Ndudzi v. Castro*, No. SA-20-CV-0492-JKP, 2020 WL 3317107, at *3 (W.D. Tex. June 18, 2020) (Pulliam, J.) (quoting *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam)). "But, as here, when a case has proceeded entirely as a habeas action to final resolution, there is no need to determine the substance or procedural viability of any non-habeas claim given the dispositive determination on the primary habeas issue presented." *Trujillo v. Noem*, No. 5:25-CV-1266-JKP, 2025 WL 3471572, at *6 (W.D. Tex. Nov. 24, 2025) (Pulliam, J.).

found by nearly every other district court to address this issue, "the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades" make clear section 1226 applies here. *Buenrostro-Mendez*, 2025 WL 2886346, at *3.

### C. Humanitarian Parole Per Section 1182(d)(5)(A)

Respondents' argument regarding Petitioner's humanitarian parole spans a grand total of *three sentences* and is wholly devoid of case law (Dkt. No. 11 at 4–5). Yet according to Respondents, Petitioner's 2023 parole did not the alter the nature of his "applicant for admission" status (Dkt. No. 11 at 4). To the contrary, Respondents claim Petitioner's status reverted to that of an alien for admission once his parole expired on April 18, 2025 (*see* Dkt. No. 11 at 4). With this, Respondents venture to contravene the Court's firmly established positions on §§ 1225(b)(2)(A), 1226(a).

"An applicant for admission detained under Section 1225(b)(1) or (b)(2) may be temporarily released on parole for urgent humanitarian reasons or significant public benefit pursuant to Section 1182(d)(5)(A)." *Rodriguez-Acurio v. Almodovar*, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *11 (E.D.N.Y. Nov. 28, 2025) (citation modified) (quoting *Jennings*, 583 U.S. at 288). When parole is granted, it "shall not be regarded as an admission of the alien." § 1182(d)(5)(A). Once parole terminates, the statute provides that "the alien shall forthwith return or be returned to the custody from which he was paroled" and "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

But the nuance comes when handling an alien "in the same manner as that of any other applicant for admission." Courts—including this one—have recently determined that aliens residing in the United States for *multiple years* are detained per Section

7

1226(a). *Rodriguez-Acurio*, 2025 WL 3314420, at *18; *Cabrera Martinez v. Marich*, No. 25-CV-1110- LJV, 2025 WL 3771228, at *7 (W.D.N.Y. Dec. 31, 2025); *Nikabadze v. Vergara*, No. 5:25-cv-236, slip. op. at 5 (S.D. Tex. Jan. 21, 2025); *Guzman v. Bondi*, No. 1:25-CV-2055-RP, 2025 WL 3724465, at *3 (W.D. Tex. Dec. 23, 2025) (an alien residing in the country for years is not actively seeking admission). While § 1182(d)(5)(A) may authorize Petitioner's custodial return, the Court need not ignore his previous parole status and time lived in the country. *Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *11 (S.D.N.Y. Dec. 17, 2025). Nor is custodial return synonymous with mandatory detention. *Clark v. Martinez*, 543 U.S. 371, 385 (2005) (nothing in § 1182(d)(5)(A)'s text "affirmatively authorizes detention"). At bottom, "[a] noncitizen is not reverted by operation of law to status as an arriving alien—they remain a noncitizen living in the United States who used to be paroled and must be treated by the INA accordingly." *Qasemi*, 2025 WL 3654098, at *11; *Rodriguez-Acurio*, 2025 WL 3314420, at *17 ("[A] noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country . . . .").

Finally, this reading is consistent with the Court's well-established stance on Respondents' position. "[M]ere termination of Petitioner's parole does not result in [his] mandatory detention." *Daza v. Albarran*, No. 25-CV-10214-RFL, 2026 WL 81518, at *3 (N.D. Cal. Jan. 12, 2026). Critically, Petitioner's subsequent detention was *not* acquired while he was seeking admission, "so Section 1225(b)(2)'s mandatory detention provision does not apply" for the same reasons it would not apply as the Court has previously found. *Id.* at *4; *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) ("8 U.S.C. § 1226, provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal.").

8

## IV.  CONCLUSION

Petitioner's Writ of Habeas Corpus (Dkt. No. 1) is **GRANTED IN PART** and **DENIED IN PART**. Respondents are **ORDERED** to provide Petitioner with a bond hearing pursuant to § 1226(a) no later than **February 9, 2026**. To the extent the Petition seeks Petitioner's release, it is **DENIED**. *Jacobo*, 2026 WL 145460, at *1 (the district court is without authority to order immediate release when the appropriate relief is a bond hearing under § 1226(a)). All other relief not expressly provided is **DENIED**.

Respondents' Motion for Summary Judgment (Dkt. No. 11) is **DENIED**.

Although the Court is terminating the case, the parties are **ORDERED** to update the Court on the status of the bond hearing no later than **February 16, 2026**.

The Clerk of Court is **DIRECTED** to **TERMINATE** this civil action. The Court will enter Final Judgment under separate cover. *See* Fed. R. Civ. P. 58(a).

It is so **ORDERED**.

**SIGNED** February 2, 2026.

*[signature]*
Marina Garcia Marmolejo
United States District Judge